IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DIGIMEDIA TECH, LLC,

          Plaintiff,

   v.

HYUNDAI MOTOR COMPANY, KIA
CORPORATION, and KIA AMERICA, INC.

        Defendants.

CIVIL ACTION

NO. 2:24-cv-510

**Jury Trial Demanded**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DigiMedia Tech, LLC ("Plaintiff") files this Complaint for Patent Infringement and states as follows:

## THE PARTIES

1.     Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 44 Milton Ave., Suite 254, Alpharetta, GA 30009.

2.     On information and belief, Defendant Hyundai Motor Company ("Hyundai") is a corporation organized and existing under the laws of Korea, with a principal office at 12 Heolleung-ro Seocho-gu, Seoul 06797, Republic of Korea. Upon information and belief, Hyundai does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

3.     On information and belief, Defendant Kia Corporation ("Kia Korea") is a corporation organized and existing under the laws of the South Korea, having its principal place of business at 12 Heolleung-ro, Seocho-gu, Seoul, 06797, South Korea. On information and belief, Kia Korea is minority-owned by Hyundai. Further, on information and belief, Kia Korea

is a minority owner of various Hyundai subsidiaries. On information and belief, Kia Korea does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

4.      On information and belief, Defendant Kia America, Inc. ("Kia Ameria") is a corporation organized and existing under the laws of the State of California, having a place of business in this Judicial District at 5810 Tennyson Pkwy #400, Plano, TX. On information and belief, Kia America is a wholly owned subsidiary of Kia Korea. On information and belief, Kia America is registered to do business in the State of Texas. Kia Korea and Kia America are collectively referred to herein as "Kia."

## JURISDICTION AND VENUE

5.      This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

6.      This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendants have, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint. Moreover, on information and belief, Defendants have purposefully and voluntarily placed their products into the stream of commerce with the expectation that they will be purchased and used by customers located in the State of Texas. On information and belief, Defendants' customers in the State of Texas have used Defendants' infringing products.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) with respect to Hyundai and Kia Korea because they are foreign corporations. Venue is proper in this Court

pursuant to 28 U.S.C. § 1400(b) with respect to Kia America because, on information and belief, it has a regular and established place of business and has committed acts of patent infringement in this Judicial District.

## FACTUAL BACKGROUND

**The '086 Patent**

8.      Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,567,086 entitled "Immersive Video System Using Multiple Video Streams" ("the '086 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

9.      A true and correct copy of the '086 patent is attached hereto as Exhibit A. The '086 patent is incorporated herein by reference.

10.      The application that became the '086 patent was filed on July 25, 2000.

11.      The '086 patent issued on May 20, 2003, after a full and fair examination by the USPTO.

12.       The '086 patent is and is legally presumed to be valid, enforceable, and directed to patent-eligible subject matter.

13.      The elements recited in the asserted claims of the '086 patent were not well-understood, routine, or conventional when the application that became the '086 patent was filed.

14.      The '086 patent identifies technological shortcomings existing in the art prior to the '086 patent. *See, e.g.*, '086 patent at 2:48-67; 4:7-12. As expressed in the '086 patent, the inventions disclosed and claimed in the '086 patent overcome such technological shortcomings. *Id*. at 3:1-22; 4:12-17; 9:36-44. The Detailed Description of the '086 patent contains additional detail that would assist a person of ordinary skill in the art in understanding the scope of the claimed invention and to implement them without undue experimentation. *Id*. at 4:17-9:34.

15.     The claims of the '086 patent are directed to technical solutions to the technical problem of how to increase the resolution and quality of immersive video for environment display systems that use multiple video streams and conventional video components. One of the reasons this is important is that, for camera systems with 360 degrees of view, users may prefer to view video at different angles with higher resolution. The video display system may not "know" or be set to a preferred angle for the users when the camera system starts processing video.

16.     Supporting higher resolution views for user selectable angles from a camera with a 360-degree field of view calls for technical solutions. The '086 patent discloses and claims such technical solutions. For example, an immersive video system can produce a plurality of video streams using associated environment data, and a user can select a preferred video stream. First environment data, such as camera settings, can be shared between the plurality of video streams to reduce data processing or data storage requirements. Second environment data, such as directional audio, can be for a first video stream, where the second environment data does not overlap another video stream. This approach overcomes a problem in which using the same environment data for all views results in lower quality. Consequently, the technology in the '086 patent enables both efficient operation while also supporting preferred user features, such as selecting a view angle with higher resolution from the 360-degree field of view.

17.     The steps set forth in the asserted claims of the '086 patent provide a technical solution to the technical problem of supporting high quality views for user selectable angles from a camera with a 360-degree field of view.

18.     For example, claim 24 of the '086 patent recites the following:

24. A method of displaying a view window of an environment from a plurality of video streams, wherein each video stream includes environment data for recreating different viewable ranges of the environment, the method comprising:

selecting an active video stream from the plurality of video streams;

decoding the active video stream; and

generating an image for the view window using the active video stream.

19.     The claimed set of steps set forth in the claims of the '086 patent constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for accomplishing the goal of accurate and automated information exchange.

20.     This claimed set of steps was not well-understood, routine, or conventional at the time of the invention. This is evidenced, for example, by the '086 patent's assertions, including those referenced herein, that the disclosed and claimed inventions improved upon technological shortcomings in the existing art.

21.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the fact that the inventor of the '086 patent submitted a sworn declaration, subject to penalty for willful false statements, that "I believe I am the original, first and sole inventor . . . of subject matter . . . that is disclosed and/or claimed and for which a patent is solicited by way of the application entitled 'Video System Using Multiple Video Streams.'"

22.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the prosecution history of the '086 patent. The U.S. Patent & Trademark Office has stated that the duties of a Patent Examiner include the following:

• Reads and understands the invention set forth in the specification

      • Determines whether the application is adequate to define the metes and bounds of the claimed invention
      • Determines the scope of the claims
      • Searches existing technology for claimed invention
      • Determines patentability of the claimed invention

Exhibit K at 11, *The Role of the Patent Examiner*, Sue A. Purvis, Innovation and Outreach

Coordinator, USPTO, available at

https://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf.

      23.    Thus, the Examiner who examined the '086 patent, in accordance with his duties,

(1) read and understood the invention set forth in the specification; (2) determined whether the

application was adequate to define the metes and bounds of the claimed invention; (3)

determined the scope of the claims; (4) searched existing technology for the inventions recited in

the claims of the application; and (5) determined the patentability of the claims.

      24.    The Examiner performed these duties in his role as "advocate/protector of [the]

public interest with respect to intellectual property," which involves a "cooperative investigation

between the Examiner and the Applicant, which ensures an Applicant receives a patent only for

that which they are entitled to in accordance with Patent laws." *Id.* at 8-9.

      25.    After conducting an examination of the claims of the application underlying the

'086 patent, the Examiner determined that the claims of the '086 patent were allowable over the

art of record, including, for example, U.S. Patent No. 6,360,000. As set forth above, the '086

patent identifies shortcomings in the prior art. Had the Examiner determined that the claims of

the '086 patent merely recited well-understood, routine, or conventional components, he would

not have allowed the claims over the art of record, including the art discussed in the '086 patent's

specification and the art reviewed by the Examiner during prosecution. The fact that the

Examiner did allow the claims shows that he did not determine that the claims of the '086 patent merely recited well-understood, routine, or conventional components.

26.     The significance of the inventiveness of the '086 patent is illustrated by the fact that it has been cited in 27 other patent applications, including the following patents and published patent applications: US20030016228A1; US6654019B2; US6747647B2; US20040169663A1; US20060248570A1; US20060268102A1; US20070126932A1; US20070126864A1; US20070126938A1; US20070141545A1; US20070174010A1; US20080018792A1; US20080288876A1; US20090067813A1; US20090184981A1; US20100017047A1; US20140229609A1; CN104244019A; US9183560B2; US20160156705A1; US20170084073A1; US20170084086A1; WO2018046705A3; WO2018223241A1; EP3440843A4; US10616551B2; and US10628019B2.

**The '250 Patent**

27.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,741,250 entitled "Method and System for Generation of Multiple Viewpoints into a Scene Viewed by Motionless Cameras and for Presentation of a View Path" ("the '250 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

28.     A true and correct copy of the '250 patent is attached hereto as Exhibit B. The '250 patent is incorporated herein by reference.

29.     The application that became the '250 patent was filed on October 17, 2001.

30.     The '250 patent issued on May 25, 2004, after a full and fair examination by the USPTO.

31.     The '250 patent is and is legally presumed to be valid, enforceable, and directed to patent-eligible subject matter.

32.     The elements recited in the asserted claims of the '250 patent were not well-understood, routine, or conventional when the application that became the '250 patent was filed.

33.     The '250 patent identifies shortcomings in the art as it existed before the '250 patent. *See, e.g.,* '250 patent at 2:20-37; 2:45-58. The '250 patent also identifies desirable improvements to the existing art. *Id*. at 2:38-44; 2:59-62. The '250 patent improves upon these shortcomings in the art as it existed prior to the invention of the technical solutions disclosed and claimed in the '250 patent.

34.     The claims of the '250 patent are directed to technical solutions to the technical problem of using a single camera to provide a view path through one or more video segments to determine which video frames in the video segments are used to generate a view. One of the reasons this is important is that users of a camera with a wide field of view may prefer to select and view (or have selected for them) only portions of the supported wide field of view. The camera's field of view may be sufficiently wide to create distorted images on a rectangular screen. Users may prefer portions with reduced distortion, which calls for technical solutions. The '250 patent discloses and claims such technical solutions. The camera can record a video stream over the wide field of view. The camera and/or a user can designate a portion of the video stream to be a video segment and subsequently designate a view path through the video segment. Consequently, the technology in the '250 patent enables the view of portions of the camera's wide field of view with reduced distortion.

35.     For example, claim 1 of the '250 patent claims:

    1. A method of:

recording a video stream comprising a plurality of frames, wherein said plurality of frames define a plurality of distorted images;

designating a portion of said video stream to be a video segment; and

specifying a view path through said video segment.

36.     The set of steps set forth in asserted claim 1 of the '250 patent provides a technical solution to the technical problem of providing view paths without distortion.

37.     The claimed set of steps set forth in the '250 patent constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for providing view paths without distortion.

38.     This claimed set of steps was not well-understood, routine, or conventional at the time of the invention. This is evidenced, for example, by the '250 patent's assertions, including those referenced herein, that the disclosed and claimed inventions improved upon technological shortcomings in the existing art.

39.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the fact that the inventors of the '250 patent submitted sworn declarations, subject to penalty for willful false statements, that "I/we believe that I/we am/are the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought."

40.     That the claimed set of steps was not well-understood, routine, or conventional at the time of the invention is further evidenced by the prosecution history of the '250 patent. The U.S. Patent & Trademark Office has stated that the duties of a Patent Examiner include the following:

• Reads and understands the invention set forth in the specification
• Determines whether the application is adequate to define the metes and bounds of the claimed invention
• Determines the scope of the claims

• Searches existing technology for claimed invention
• Determines patentability of the claimed invention

Exhibit K at 11, *The Role of the Patent Examiner*, Sue A. Purvis, Innovation and Outreach

Coordinator, USPTO, available at

https://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf.

41.     Thus, the Examiner who examined the '250 patent, in accordance with his duties,

(1) read and understood the invention set forth in the specification; (2) determined whether the

application was adequate to define the metes and bounds of the claimed invention; (3)

determined the scope of the claims; (4) searched existing technology for the inventions recited in

the claims of the application; and (5) determined the patentability of the claims.

42.     The Examiner performed these duties in his role as "advocate/protector of [the]

public interest with respect to intellectual property," which involves a "cooperative investigation

between the Examiner and the Applicant, which ensures an Applicant receives a patent only for

that which they are entitled to in accordance with Patent laws." *Id.* at 8-9.

43.     After conducting an examination of the claims of the application underlying the

'250 patent, the Examiner determined that the claims of the '250 patent were allowable over the

art of record. As set forth above, the '250 patent identifies shortcomings in the prior art. Had the

Examiner determined that the claims of the '250 patent merely recited well-understood, routine,

or conventional components, he would not have allowed the claims over the art of record,

including the art discussed in the '250 patent's specification and the art reviewed by the

Examiner during prosecution. The fact that the Examiner did allow the claims shows that he did

not determine that the claims of the '250 patent merely recited well-understood, routine, or

conventional components.

44.     The significance of the inventiveness of the '250 patent is illustrated by the fact that it has been cited in 153 other patent applications, including the following patents and published patent applications: US20020196327A1; US20030193562A1; US20030234866A1; US20040001137A1; US20040233222A1; US20040263636A1; US20040263611A1; US20040263646A1; US20040267521A1; US20050018687A1; US20050046626A1; US20050046703A1; US200501170334A1; US200501170155A1; US20050122393A1; US20050151837A1; US20050180656A1; US20050190768A1; US20050206659A1; US20050243167A1; US20050243168A1; US20050243166A1; US20050280700A1; US20050285943A1; US20060023075A1; US20060022962A1; US20060092269A1; US7108378B1;  US20060268102A1; US20070022379A1; US20070058879A1; US20070124783A1; US20070156924A1; US20070165007A1; US7260257B2; US20070299912A1; US20070299710A1; US20070300165A1; US20080008458A1; US20080049123A1; US20080068352A1; US20080117296A1; US20080129700A1; US20080291279A1; US20080317451A1; US20090079740A1; US20090160801A1; US7593057B2; US20090305803A1; US7643006B2; US20100110005A1; US20100254670A1; WO2010127418A1; US20110043628A1; US20110095977A1; US20110128387A1; USRE42794E1; US8055022B2; US20110298917A1; US8089462B2; USRE43084E1; US8094137B2; US8115753B2; US8120596B2; US8149221B2; US8274496B2; US8289299B2; US8384693B2; US20130063427A1; US8405636B2; US8432377B2; US8456447B2; US8456418B2; US8508508B2; US8692768B2; US8902193B2; US20150042815A1; US9294757B1; US9591272B2; US9646444B2; US9674181B2; US20170214889A1; US9942520B2; US10129569B2; US10156706B2; WO2019017695A1; US10225479B2; US10230898B2; US10250889B1; US10250797B2; US10281979B2; US10284780B2;

US10288840B2; US10288897B2; US10288896B2; US10291845B2; US10371928B2;

US10379371B2; US10488631B2; US10534153B2; US10578948B2; US10615513B2;

US10616484B2; US10635931B2; US10645286B2; US10694168B2; US10706518B2;

US10845565B2; US10871561B2; US10884321B2; US10904512B2; USRE48444E1;

US10951834B2; US10951859B2; US10955546B2; US10976567B2; US11037364B2;

US11272154B2; US11268829B2; US11277596B2; US11287081B2; US11315276B2;

US11333955B2; US11363180B2; US11368631B1; US11378682B2; US11506778B2;

US11525910B2; US11531209B2; US11635596B2; US11637977B2; US11640047B2;

US11659135B2; US11693064B2; US11770618B2; US11770609B2; US11832018B2;

US11900966B2; US11910089B2; US11949976B2; US11946775B2; and US11962901B2.

**The '220 Patent**

45.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,684,220 entitled "Method and System for Automatic Information Exchange" ("the '220 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

46.     A true and correct copy of the '220 patent is attached hereto as Exhibit C. The '220 patent is incorporated herein by reference.

47.     The application that became the '220 patent was filed on September 20, 2000.

48.     The '220 patent issued on January 27, 2004, after a full and fair examination by the USPTO.

49.     The '220 patent is and is legally presumed to be valid, enforceable and directed to patent eligible subject matter.

50.     The elements recited in the asserted claims of the '220 patent were not well-understood, routine, or conventional when the application that became the '220 patent was filed. This is demonstrated, for example, by the decision of the Patent Examiner to allow the claims of the '220 patent over the art of record.

51.     The claims of the '220 patent are directed to technical solutions to the technical problem of a server system conducting automated information exchanges. One of the reasons this is important is to support automated and accurate server-generated responses to customer inquiries in online chat systems. With accurate and automated information exchange, routine customer inquiries can be answered directly by a server system. The '220 patent discloses and claims such technical solutions for automated information exchange. For example, the '220 patent couples an information source to a processor that stores a data model. The '220 patent discloses a loading engine for automatically creating object links between input variables and output variables for the data objects in the data model. Consequently, the technology in the '220 patent enables automated and accurate online responses from a server system to customer support inquiries without requiring answers from customer support representatives.

52.     For example, claim 10 of the '220 patent claims:

10. A method for automatic information exchange, comprising:

retrieving a model from an information source, the model having a plurality of objects, each of the plurality of objects having an input variable and an output variable;

automatically identifying the input variables and the output variables of each of the plurality of objects; and

automatically creating object links between the corresponding input variables and output variables of each of the plurality of objects.

53.     The set of steps set forth in the asserted claim of the '220 patent provides a technical solution to the technical problem of a server system conducting automated information.

54.     The claimed set of steps set forth in the '220 patent constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for accomplishing the goal of accurate and automated information exchange.

55.     The significance of the inventiveness of the '220 patent is illustrated by the fact that it has been cited in at least six other patent applications, including the following U.S. patents and published patent applications: US20060010423A1, US20060010419A1, US20060136497A1, EP1674953A1, and US20140373034A1. These public documents and their related prosecution histories are incorporated herein by reference and provide concrete proof that the inventions claimed and disclosed in the '220 patent were not well-understood, routine, or conventional at the time of the invention.

## COUNT I – INFRINGEMENT OF THE '086 PATENT BY KIA KOREA

56.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

57.     Kia Korea has directly infringed one or more claims of the '086 patent. For example, Kia Korea has infringed at least claim 24 of the '086 patent, either literally or under the doctrine of equivalents, in connection with Kia vehicles with a surround-view camera system, as detailed in the preliminary claim chart attached hereto as Exhibit D and incorporated herein by reference.

58.     Kia Korea has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '086 patent. On information and belief, Kia Korea has performed all steps of this claim or, alternatively, to the extent a user performed any step, Kia Korea conditioned the user's use of the functionality of Kia Korea's accused instrumentalities (e.g., Kia vehicles with a surround-view camera system) described herein on

the performance of that step as disclosed in Exhibit D. The accused functionality relates to the accused products' video processing functionality, as set forth in Exhibit D. On information and belief, a user of the accused instrumentalities could not use the functionality described in Exhibit D without performance of the steps recited in claim 24 of the '086 patent. Kia Korea also controlled the manner and/or timing of the functionality described in Exhibit D. In other words, for a user to utilize the video processing functionality described in Exhibit D, the steps of claim 24 of the '086 patent had to be performed in the manner described in Exhibit D. Otherwise, the video processing functionality of the accused instrumentalities, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

59.     Kia Korea's infringing activities have been without authority or license under the '086 patent.

60.     Because the asserted claim of the '086 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

61.     Plaintiff has been damaged by Kia Korea's infringement of the '086 patent, and Plaintiff is entitled to recover damages for Kia Korea's infringement, which damages cannot be less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '250 PATENT BY KIA KOREA

62.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

63.     Kia Korea has directly infringed one or more claims of the '250 patent. For example, Kia Korea has infringed at least claim 1 of the '250 patent, either literally or under the doctrine of equivalents, in connection with Kia vehicles with a surround-view camera system, as

detailed in the preliminary claim chart attached hereto as Exhibit E and incorporated herein by reference.

64.     Kia Korea has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '250 patent. On information and belief, Kia Korea has performed all steps of this claim or, alternatively, to the extent a user performed any step, Kia Korea conditioned the user's use of the functionality of Kia Korea's accused instrumentalities (e.g., vehicles with a surround-view camera system) described herein on the performance of that step as disclosed in Exhibit E. The accused functionality relates to the accused products' video processing functionality, as set forth in Exhibit E. On information and belief, a user of the accused instrumentalities could not use the functionality described in Exhibit E without performance of the steps recited in claim 1 of the '250 patent. Kia Korea also controlled the manner and/or timing of the functionality described in Exhibit E. In other words, for a user to utilize the video processing functionality described in Exhibit E, the steps of claim 1 of the '250 patent had to be performed in the manner described in Exhibit E. Otherwise, the video processing functionality of the accused instrumentalities, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

65.     Kia Korea's infringing activities have been without authority or license under the '250 patent.

66.     Because the asserted claim of the '250 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

67.     Plaintiff has been damaged by Kia Korea's infringement of the '250 patent, and Plaintiff is entitled to recover damages for Kia Korea's infringement, which damages cannot be less than a reasonable royalty.

### COUNT III – INFRINGEMENT OF THE '220 PATENT BY KIA AMERICA

68.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

69.     Kia America has directly infringed one or more claims of the '220 patent. Kia America has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '220 patent.

70.     For example, Kia America has infringed at least claim 10 of the '220 patent, either literally or under the doctrine of equivalents, by performing all recited steps in connection with at least its artificial-intelligence-powered virtual assistant, as detailed in the preliminary claim chart attached hereto as Exhibit F and incorporated herein by reference.

71.     Because the asserted claims of the '220 patent are method claims, the marking requirement of 35 U.S.C. § 287 does not apply to them. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

72.     Kia America's infringing activities have been without authority or license under the '220 patent.

73.     Plaintiff has been damaged by Kia America's infringement of the '220 patent, and Plaintiff is entitled to recover damages for Kia America's infringement, which damages cannot be less than a reasonable royalty.

### COUNT IV – INFRINGEMENT OF THE '086 PATENT BY HYUNDAI

74.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

75.     Hyundai has directly infringed one or more claims of the '086 patent. For example, Hyundai has infringed at least claim 24 of the '086 patent, either literally or under the doctrine of equivalents, in connection with Hyundai and Genesis vehicles with a surround-view camera system, as detailed in the preliminary claim charts attached hereto as Exhibit G and Exhibit H and incorporated herein by reference.

76.     Hyundai has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '086 patent. On information and belief, Hyundai has performed all steps of this claim or, alternatively, to the extent a user performed any step, Hyundai conditioned the user's use of the functionality of Hyundai's accused instrumentalities (e.g., its vehicles with a surround-view camera system) described herein on the performance of that step as disclosed in Exhibit G and Exhibit H. The accused functionality relates to the accused products' video processing functionality, as set forth in Exhibit G and Exhibit H. On information and belief, a user of the accused instrumentalities could not use the functionality described in Exhibit G and Exhibit H without performance of the steps recited in claim 24 of the '086 patent. Hyundai also controlled the manner and/or timing of the functionality described in Exhibit G and Exhibit H. In other words, for a user to utilize the video processing functionality described in Exhibit G and Exhibit H, the steps of claim 24 of the '086 patent had to be performed in the manner described in Exhibit G and Exhibit H. Otherwise, the video processing functionality of the accused instrumentalities, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

77.     Hyundai's infringing activities have been without authority or license under the '086 patent.

78.     Because the asserted claim of the '086 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

79.     Plaintiff has been damaged by Hyundai's infringement of the '086 patent, and Plaintiff is entitled to recover damages for Hyundai's infringement, which damages cannot be less than a reasonable royalty.

## COUNT V – INFRINGEMENT OF THE '250 PATENT BY HYUNDAI

80.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

81.     Hyundai has directly infringed one or more claims of the '250 patent. For example, Hyundai has infringed at least claim 1 of the '250 patent, either literally or under the doctrine of equivalents, in connection with Hyundai's vehicles with a surround-view camera system, as detailed in the preliminary claim charts attached hereto as Exhibit I and Exhibit J and incorporated herein by reference.

82.     Hyundai has made, used, sold, offered for sale, and/or imported products that incorporate one or more of the inventions claimed in the '250 patent. On information and belief, Hyundai has performed all steps of this claim or, alternatively, to the extent a user performed any step, Hyundai conditioned the user's use of the functionality of Hyundai's accused instrumentalities (e.g., vehicles with a surround-view camera system) described herein on the performance of that step as disclosed in Exhibit I and Exhibit J. The accused functionality relates to the accused products' video processing functionality, as set forth in Exhibit I and Exhibit J. On information and belief, a user of the accused instrumentalities could not use the functionality described in Exhibit I and Exhibit J without performance of the steps recited in claim 1 of the '250 patent. Hyundai also controlled the manner and/or timing of the functionality described in

Exhibit I and Exhibit J. In other words, for a user to utilize the video processing functionality described in Exhibit I and Exhibit J, the steps of claim 1 of the '250 patent had to be performed in the manner described in Exhibit I and Exhibit J. Otherwise, the video processing functionality of the accused instrumentalities, and the corresponding benefit, would not have been available to users of the accused instrumentalities.

83.     Hyundai's infringing activities have been without authority or license under the '250 patent.

84.     Because the asserted claim of the '250 patent is a method claim, the marking requirement of 35 U.S.C. § 287 does not apply. Therefore, Plaintiff has complied with all applicable requirements of § 287 such that it is entitled to past damages for infringement.

85.     Plaintiff has been damaged by Hyundai's infringement of the '250 patent, and Plaintiff is entitled to recover damages for Hyundai's infringement, which damages cannot be less than a reasonable royalty.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

A.      Entry of judgment that Kia Korea and Hyundai have infringed at least one claim of the '086 patent,

B.      Entry of judgment that Kia Korea and Hyundai have infringed at least one claim of the '250 patent,

C.      Entry of judgment that Kia America has infringed at least one claim of the '220 patent,

D.      Damages in an amount to be determined at trial for Defendants' infringement,

which amount cannot be less than a reasonable royalty, and an accounting of all

infringing acts, including but not limited to those acts not presented at trial,

E.      A determination that this case is exceptional, and an award of attorney's fees,

F.      All costs of this action,

G.      Pre-judgment and post-judgment interest on the damages assessed, and

H.      Such other and further relief, both at law and in equity, to which Plaintiff may be

entitled and which the Court deems just and proper.

This 10th day of July, 2024.

                                        /s/ *Cortney S. Alexander*
                                        Daniel A. Kent
                                          dankent@kentrisley.com
                                          Tel: (404) 585-4214
                                          Fax: (404) 829-2412
                                        Cortney S. Alexander
                                          cortneyalexander@kentrisley.com
                                          Tel: (404) 855-3867
                                          Fax: (770) 462-3299
                                        KENT & RISLEY LLC
                                        5755 N Point Pkwy Ste 57
                                        Alpharetta, GA 30022

                                        Attorneys for Plaintiff